**ALLEGHENY AIRLINES, INC., Third-Party Plaintiff-Appellant,**

v.

**Lee LeMAY, as Administrator of Estate of Robert W. Carey, Deceased, Third-Party Defendant-Appellee.**

Nos. 71–1034 through 71–1059.

United States Court of Appeals, Seventh Circuit.

July 2, 1971.

Certiorari Denied Dec. 20, 1971.

See 92 S.Ct. 565.

Walter E. Rutherford, Haight, Gardner, Poor & Havens of New York City, Emerson Boyd, Locke, Reynolds, Boyd & Weisell, Indianapolis, Ind., for appellant.

Floyd W. Burns, and Richard R. McDowell, Cadick, Burns, Duck & Neighbours, Indianapolis, Ind., for appellee, of counsel.

Before SWYGERT, Chief Judge, and KERNER and PELL, Circuit Judges.

PER CURIAM.

This matter, which is now before the court on its own motion, arises from litigation following a mid-air collision near Fairland, Indiana on September 9, 1969, between a jet plane of Allegheny Airlines, Inc. (Allegheny) and a small plane piloted by Robert W. Carey, who is the decedent of Lee LeMay, administrator (LeMay). Subsequent to the accident, some 70 plus suits were filed in various district courts throughout the United States.

On February 10, 1970, the Judicial Panel on Multidistrict Litigation transferred all of the actions to the United States District Court for the Southern District of Indiana, in which some of the actions were already pending, pursuant to 28 U.S.C. § 1407(a) for pretrial proceedings. In re Mid-Air Collision Near Fairland, Indiana, 309 F.Supp. 621 (Jud.Pan.Mult.Lit.1970).

After the transfer of the cases to the Southern District of Indiana, Allegheny, a defendant in the cases, served upon LeMay pursuant to Rule 14, Fed.R.Civ. P., a summons and third-party complaint seeking indemnity and contribution in each of the twenty-six cases here on appeal. LeMay had been a party in some of the actions but not in any of the actions involved in the appeals before us. LeMay was a citizen and resident of the State of Indiana and not subject to suit in the transferor forums involved in the cases from which these purported appeals arise.

In the district court LeMay moved to dismiss the third-party complaints. The motions were sustained and the third-party complaints dismissed by the district court "without prejudice." On the same day that the order of dismissal was entered, a separate order denied Allegheny's alternative motion for requisite findings and entry of partial final judgment under Rule 54(b), Fed.R.Civ. P., or for certification of the question for immediate appeal pursuant to 28 U. S.C. § 1292(b).

Timely notices of appeal were filed in the district court from the "entry and judgment dismissing third-party actions" in each case in which said judgment had been entered.

By order of this court the twenty-six appeals were consolidated. Subsequently, LeMay filed a motion to dismiss the appeals as did six of the plaintiffs in the action below.

As to both the plaintiffs so moving and as to LeMay, this court has heretofore ordered that said motions to dismiss were denied "without prejudice to the parties' rights to raise the same issues in their briefs and on oral argument." Subsequently this court entered an order on its own motion that it had taken the motions to dismiss under advisement by way of reconsideration and that no further briefs would be received

until the court ruled on the motions to dismiss which were then under reconsideration.

■ As to the six plaintiffs, it is our opinion that while they may have some justifiable concern with respect to the retardation effect of the present proceeding on the progress of their lawsuit, they nevertheless have no standing in this court for the purpose of filing motions to dismiss the appeal. *See* Richmond v. Town of Largo, 127 F.2d 264 (5th Cir. 1942); Cramp Shipbuilding Co. v. United States, 195 F.2d 848 (3rd Cir. 1952); Empire Seafoods, Inc. v. Anderson, 398 F.2d 204, 216–218 (5th Cir. 1968). Accordingly, the motions of the plaintiffs to dismiss the appeal, which heretofore were denied without prejudice, are upon reconsideration now denied. Such ruling would not preclude the plaintiffs from filing an appropriate motion for leave to file a brief amicus curiae pursuant to Rule 29, Fed.R.App. P.

LeMay, of course, has standing as a party in the third-party complaint procedure and we now turn to his motion to dismiss.

■ The question before us is jurisdictional. This court under 28 U.S.C. § 1291 has jurisdiction of appeals from " * * * all final decisions of the district courts of the United States * * *." The question then is whether the entry of the district court was a final judgment or whether there is some exception to § 1291 which would permit us to entertain the present appeals. We find no basis for so doing.

A Note, Appealability in the Federal Courts, 75 Harv.L.Rev. 351 (1961), deals extensively with the questions before us.

In the type of situation here involved, the principal bases which would provide jurisdiction to this court would be found either in Rule 54(b), Fed.R.Civ.P., or in 28 U.S.C. § 1292(b). While Allegheny has attempted to cloak itself with appellate apparel by the district court's denial, it comes to us without the garment so necessary for review.

In Panichella v. Pennsylvania R.R. Co., 252 F.2d 452 (3d Cir. 1958), in which a third-party procedure had been involved in the appeal, the court discussed the policy reasons for not entertaining an appeal and, even though there the district court had entered an order pursuant to Rule 54(b), found in reversing that such action was not a proper exercise of discretion. *See also* Luckenbach Steamship Co. v. H. Muehlstein & Co., 280 F.2d 755 (2d Cir. 1960); Sierra v. Merchants Mutual Casualty Co., 262 F.2d 287 (1st Cir. 1958); and Weinstock Hermanos and Cia Ltda. v. American Aniline and Extract Company, 406 F.2d 1327 (3d Cir. 1969).

Aside from the underlying policy against piecemeal appeals and aside from the practical aspect that an appeal on a third-party claim at this stage would serve to delay the trial of the principal claims, the most persuasive argument against entertaining the present appeals is found in the statement in 75 Harv.L.Rev. 351, *supra,* dealing with orders subject to Rule 54(b) but also applicable in principle to 28 U.S.C. § 1292(b), at 362:

> "[Abuse of the district court's discretion of a finding of finality] is likely to be found * * * where the order may be rendered moot by the subsequent course of the litigation, as in the case of a dismissal of the defendant's claim against an impleaded party before the defendant has been found liable to the plaintiff."

Here, if LeMay had been successfully impleaded, he would have had to participate in the trial of twenty-six cases in eight different jurisdictions other than the Southern District of Indiana. If Allegheny successfully asserts a defense to the main action, then the participation by LeMay would have been fruitless and unnecessary. The third-party action against LeMay is only in a non-moot status if judgment is obtained against Allegheny who then must prove its right either to indemnity or contribution.

Allegheny concedes that it was the intention of the district court that there

be no immediate appeal but in effect contends that policy reasons in the context of modern concepts of multidistrict litigation and the underlying purpose of third-party procedure to avoid duplication of litigation should be the basis for our assuming appellate jurisdiction.

From the point of view of legality, Allegheny contends: (a) appealability is not to be decided by rote, Horizons Titanium Corp. v. Norton Co., 290 F.2d 421, 423 (1st Cir. 1961); (b) finality should not be construed so as to deny effective review of a claim fairly severable [1] from the context of a larger litigious process, Swift & Co. Packers v. Compania Colombiana, 339 U.S. 684, 688–689, 70 S.Ct. 861, 94 L.Ed. 1206 (1950); (c) finality should be given a practical, not technical, construction and there should be a balancing of the costs of piecemeal review with denial of justice to the would-be appellant by delay,[2] Gillespie v. United States Steel Corp., 379 U.S. 148, 152–153, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964) and (d) a dismissal "without prejudice" does not preclude appeal, Blair v. Cleveland Twist Drill Co., 197 F.2d 842, 845 (7th Cir. 1952).

While it is not entirely clear whether the "without prejudice" refers to no bar being imposed upon a refiling of the third-party complaint or merely that the matter is left open for the district court on appropriate motion or on its own motion to reconsider its action of dismissal, nevertheless the words are more than merely suggestive of a lack of finality.

■ Allegheny appears to be contending that once the cases are returned to the transferor districts, no effective review of the judgment of dismissal can be obtained and therefore the judgment is final as to it on the basis of the authorities hereinbefore cited. If Allegheny means that this particular judgment of dismissal would not return as a part of the "package" to the transferor district so that the dismissal as well as the judgment in the primary action could not then be appealed to the appropriate court of appeals, we cannot agree.

It would appear to us that final judgment of all aspects of the case would be effected in the jurisdiction where it is ultimately disposed of irrespective of its interim travels. While undoubtedly pretrial proceedings under 28 U.S.C. § 1407 after order of transfer and before remand are subject to early review in the court of appeals for the transferee district, at least from the time of transfer until remand, In re Plumbing Fixture Cases, 298 F.Supp. 484, 495 (Jud.Pan. Mult.Lit.1968), we are not being asked here to review a "pretrial proceeding" as that term is contemplated in § 1407.

The Judicial Panel on Multidistrict Litigation in In re Plumbing Fixture Cases, *supra*, made a comparison of the present situation to the rules prevailing on change of venue and stated at p. 495:

> "On change of venue the overwhelming authority holds that the jurisdiction and powers of the transferee court are coextensive with that of the transferor court; that the transferee court may make any order to [sic] render any judgment that might have been rendered by the transferor court in the absence of transfer. 92 C.J.S. Venue § 207 pp. 980–981 and cases therein cited, cf. Greve v. Gibraltar Enterprises (D.N. M.) 85 F.Supp. 410, l. c. 414; that after an order changing venue the jurisdiction of the transferor court ceases; and that thereafter the transferor court can issue no further orders, and any steps taken by it are of no effect. Phebus v. Search (C.A. 8) 264 F. 407, l. c. 409; 21 C.J.S. Courts § 517a; 20 Am.Jur.2d § 149; 56 Am. Jur. Venue, § 78, p. 79. These principles are applicable to a transfer under Section 1407 from the time of entry of the order of transfer until the time of entry of an order of remand."

---

1. Of course, LeMay, backed by the district court, would scarcely concede that the claim was *fairly severable.*

2. Plaintiffs here may, and apparently do, have some feeling regarding damage to them by the delay of an appeal.

It is to be noted in the cases before us that the transferee district court was in fact being asked to render an order broader in scope than could have been rendered by the transferor court inasmuch as the transferor court could not have conceivably exercised jurisdiction over LeMay, he being a non-resident.

The question of the error, if any, in the dismissal of the third-party complaints will be subject to review in our opinion at the time of the entry of judgment on the complaints in the suits in the ultimate trial forum.

We approve of the language contained in 92 C.J.S. Venue § 207, p. 981:

"A change of venue does not deprive any party of a legal right. It does not vacate any of the proceedings taken in the cause before the change was granted. The parties are not required to file new pleadings, nor may the court to which the change is taken amend the record of the court from which the cause is brought, or allow an exception to its action. It may, however, reconsider a previous ruling in the cause, vacate it, and make a modified or contrary ruling."

The transferor court when the case is returned to it is, in our opinion, in the position of a third court on a second change of venue and takes the case with all of its errors, if any, that may have fastened on the carcase theretofore.

A third situation in addition to 28 U.S.C. § 1292(b) and Rule 52(b) is found in what has been categorized as collateral orders. *See* 75 Harv.L.Rev. 364, *supra*. The case often cited for this principle is Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

If there were any basis for appellate review of the consolidated appeals before us, it would seem to lie in the collateral-orders doctrine, which as suggested by 75 Harv.L.Rev. 351, 366 appears to mask what is in fact the exercise of appellate court discretion over interlocutory appeals. In judging the propriety of an immediate appeal, the various interpretations of the collateral-orders doctrine have weighed a number of considerations against the appellant's claimed hardship: appellate court burden, the undesirability of reviewing decisions before all the circumstances are known and the evils of trial court delay. *Id.*

Allegheny claims hardship in deferral of adjudication of its claim for indemnity or contribution but the district court apparently balanced the hardship of LeMay, who would have had to defend this claim in a number of jurisdictions in various parts of the country. Allegheny asserts over and above the hardship matter, however, certain policy reasons for our accepting jurisdiction: (a) The issue whether, after a section 1407 transfer, there can be an impleader of a third-party defendant who could not have been impleaded in the transferor court has never been ruled on; (b) with a growth of cases subject to transfer under section 1407 it is important to determine the scope of allowable impleader since it may affect the Judicial Panel policy with respect to transfer situs; (c) the allowance of the impleader will expedite the litigation in that it will allow all issues to be determined in one trial; (d) LeMay is actually a proper defendant or third-party defendant in many of the lawsuits so in any event he will be required to participate in all pretrial discovery proceedings since they are now being handled in one district court; and (e) appeal will not delay the action since the trial dates do not seem likely until the fall of 1971. Allegheny also contends that no party will be prejudiced by appellate review at this time. However, we do not find the source of this assertion other than the conjecture there will be no delay and that LeMay has to participate in the cases where he is properly a party.

Allegheny cites to us Carter Products Inc. v. Eversharp, Inc., 360 F.2d 868 (7th Cir. 1966), and Williams v. Bernhardt Bros. Tugboat Service Inc., 357 F.2d 883 (7th Cir. 1966), as being authority for our accepting jurisdiction notwithstanding Winsor v. Daumit, 179

F.2d 475 (7th Cir. 1950). *Carter* appears to us to be an exemplification of the collateral-orders doctrine and we find in most of the cases founding jurisdiction on that doctrine that the word "collateral" has more than a passing significance. There will be in these cases "no duplication of appellate court effort since the same evidence will not be relevant to the disputed order and to the claim for relief," 75 Harv.L.Rev., *supra*, at p. 365.

 While we recognize the validity of the policy arguments made by Allegheny and indeed the possibility that some courts might find jurisdiction for considering the appeals, we believe the better principle is that interlocutory orders should, with the exception of truly collateral orders, be subject to the controls of Rule 52(b) and 28 U.S.C. § 1292(b). In other words, we are not prepared to find that we have some inherent power of certiorari.

We recognize the correctness of the statement in Dickinson v. Petroleum Conversion Corp., 338 U.S. 507, 511, 70 S.Ct. 322, 324, 94 L.Ed. 299 (1950):

"The liberalization of our practice to allow more issues and parties to be joined in one action and to expand the privilege of intervention by those not originally parties has increased the danger of hardship and denial of justice through delay if each issue must await the determination of all issues as to all parties before a final judgment can be had."

Nevertheless, the answer we feel is found in the next sentence of the Supreme Court following the above quotation, "In recognition of this difficulty, present Rule 54(b), Federal Rules of Civil Procedure, was promulgated."

Thus, it seems to us that the broadening of the scope of appellate review in the interlocutory area is a matter not for our determination but for that of Congressional action or attention of rule making bodies and advisory committees. The procedures have been provided by both Congress and Federal Rules of Civil Procedure. The Note at 75 Harv.L. Rev. 351, 382, *supra*, suggests that a wrongful refusal to certify by the district court should be a ground for seeking mandamus although the courts of appeal have shown no interest thus far in mandamus to compel certification. No doubt this extraordinary writ will continue to be used very sparingly in disturbing the discretion exercised by the district court but on the other hand there may well be appropriate cases justifying this extraordinary remedy. *See* Fink v. Igoe, 279 F.2d 544 (7th Cir. 1960).

Here, however, we find no reason for disturbing the discretionary ruling of the district court and if Allegheny's position is correct it will have to be established by an appeal from the final judgments entered in the cases before us at the time of their ultimate disposition. Accordingly, the orders of the district court are affirmed.